Whyte, J.,
dissentiente. The question upon this record is, whether & fieri facias execution can issue regularly against the goods and chattels, lands and tenements of a deceased defendant, after his death, upon a judgment rendered against him in his lifetime.
There is no doubt but that at the common law, upon a judgment obtained against a man in his lifetime an execution could issue after his death, upon which the goods and chattels that were his at the time of his decease could be legally levied and sold for the satisfaction of the judgment. The rule at the common law was, that the execution bound the goods from the teste of the writ, and that it may relate back to the first day of the term, if so tested, and supersede the death of the party happening on a subsequent day of the same term. It went even further, for if there had been a verdict, and either party had died during vacation, judgment might have been entered that vacation as of the preceding term; and it would have been a good judgment at common law, as of the preceding *57 term, though by the statute of frauds, only good from the signing, as to purchasers in England, and execution might have been tested as of the judgment, and levied on the goods, &c. of the deceased.
This being the rule of the common law, the first execution in the present case against Surgoine, would have been, by that rule, regular, and will still remain so, unless it has been altered by some statute. By the common law no one shall be permitted to aver that the judgment was signed after the first day of the term, or that a fieri facias was taken out in the vacation, for this reason, that the fact is not relevant; the legal consequences do not depend upon the truth of the fact, on what day the judgment was completed, or the writ of fieri facias actually taken out, but on the rule of law, that they shall be deemed complete, and bind to all intents and purposes by relation. 2 Burrow, 967. The moment the law said judgments should bind purchasers only from the signing, it followed, that in the case of purchasers the time of signing might be shown. The execution at the common law was awarded by the Court, at the instance of, or at the suit of the party, and bore teste according to the award, which was always in term time, for' then only could the application be made to the Court for the awarding it, which was a judicial act. With us, however, in general, the issuing of an execution is performed by the clerk without the intervention of the Court, and that upon the application of the party, either express or implied. The law contemplates it may issue at any time during the vacation by the clerk, but it requires the day of issuing to be marked on it; Act of 1794, ch. 1, § 9, and that in all cases; and the sheriff or other accounting officer to mark thereon also the day he receives it. This circumstance of noting the time of actually issuing an execution, contra-distinguished from its teste, was unknown to the common law, and must therefore have been intended by the Legislature to answer some purpose, which the teste was incompetent to, for we are not to construe a statute, if it can be possibly avoided, that any clause, or even word of it, should be inoperative or in vain. 6 Bac. Ab. 380; Hard. 344. Its obvious intention was to ascertain the true time of issuing it, whenever that fact might become material to be known. And that it might become material to be known, and consequently might be pleaded or given in evidence, is manifest from the Legislature having provided by this Act, a record, by which the fact could appear, otherwise this record would have been a useless and a vain act. Showing the very day of issuing the execution, must be so far in contravention of the legal relation attached to it by the common law, and so far destroy the consequences of that relation, as the fact proves its non-existence.
Several opposite cases might be produced from the books, supporting this construction of the Act of 1794. Thus, in the case of Johnson v. Smith, 2 Bur. 950, the defendant pleaded the statute of limitations; the plaintiff re *58 plied, that on the 28th of November, thirty-second year of the king, he sued out a writ of latitat, &c. Defendant rejoined, that by the course and custom of the Court, a writ of latitat sued out after the end of any term, is supposed to have issued out of said court within the term preceding; and then avers the said latitat was really and truly out after the said 28th November, to wit, on the 8th December of the same year, &c., to which the plaintiff demurred. The question in this case was, whether the truth of the fact could be averred against the fiction of law. Lord Mansfield delivered the unanimous opinion of the Court, that the averment in the defendant’s rejoinder ought, by law, to be admitted, consequently the plaintiff’s demurrer to be overruled, and judgment for the defendant. In delivering the opinion, Lord Mansfield showed that from reason and necessity, the true time of suing out writs in many cases can be shown, in opposition to the fiction of law, and cited the statute of 5 Wm. and M. ch. 21, § 4, where the officer is required to enter the very day the writ is signed (which is precisely the present case), and he remarks on that statute, that if the very day could not be shown in pleading or evidence, it would have been most absurd to have provided a record, by which it could be shown. This is an ante-revolution case, and from the consideration it underwent, entitled to great respect. The point was argued by able counsel seven or eight times, and the Court afterwards took time to consider of it. To this Lord Mansfield alludes, when he says, in delivering his opinion, it was due to the long and great litigation which this question has borne in Westminster Hall, to consider carefully everything that has been said, and to look into the case that has been quoted, &c. No case can be more apposite to the case before the Court, than this case of Johnson and Smith. They are precisely the same in principle, with only one nominal difference, that the writ in the one case is a latitat, in the other a fieri facias : the point is the same, to wit, whether the true time of suing out a writ can be shown in -opposition to the fiction of law, that the suing out and the teste are the same time. This case decides in the affirmative; and that the consequences of the fiction cease between the teste and the true time of issuing, or in other words, that the operation and effect of an execution commence only from its actual and true issuance, whenever it is material to show it.
The principle upon which the relation of writs of execution to their teste at the common law depends, is not strictly applicable here, for formerly, at the common law, the writ of execution was always sued out by the party from the Court, and upon this application or suit of the party, was awarded by the
Court, it therefore of course, and of necessity, bore teste in term time, for being the judicial process of the Court in which judgment is given, they have no authority to grant it at any other time. In this the execution differed from original writs, which issued out of chancery, for they might bear teste at any time, that court being always open for that *59 purpose. But in. Tennessee, the writ of execution, the fieri facias, and the capias ad respondendum, an original writ, are not issued as at the common law, by a court, and tested by, and running, the former in the name of the ehief justice, or senior justice of the Court that issues it, the latter in the name of the king; but by our Constitution, Art. 5, § 9, bearing teste, and being signed by the respective clerks, and running in the name of the State of Tennessee; and by the Act of 1794, ch. 1, § 9, the issuing clerk shall mark thereon the day on which the same shall be issued, and the sheriff or executing officer shall mark thereon the day he shall have received it. The different acts of Assembly also notice the execution as a process to be issued by the clerk, upon the application of the party, without any award of the Court, and does not contemplate the interposition of a court. Thus, the Act of 1794, ch. 1, § 59, which respects the writ of execution in general, says, that where any judgment or decree shall be obtained in any County Court, for any debt, damages, portion, legacy, or distributive share, it shall be lawful for the clerk of the Court (not the Court, but recognizing the clerk as the power and authority for that purpose), where such judgment shall be given, or decree made, at the request of the plaintiff to issue execution to any county, &c. So, in like manner, other acts of Assembly respecting executions in particular cases, designate the clerk as the authority to issue, or the issuing power, without the intervention of the Court, as the Act of 1819, ch. 19, § 1, which enacts that no clerk of any court within this State, shall hereafter issue any executions, upon any judgment hereafter to be obtained, under two years after the rendition of such judgment, &e.; so also is ch. 70, § 8, of the same Act, that the clerks of the several courts in this State are hereby directed not to issue any execution, on any judgment heretofore rendered, &c., and also in like manner-the Act of 1820, ch. 7, § 14; that no clerk of any court within this State, shall issue execution upon any judgment or decree, until two years after the rendition of such judgment, unless the plaintiff shall indorse, &e.; and many other acts might be cited to prove that our laws consider the clerk, and not the Court, as the power or authority to be applied to by the party, for the issuing the execution ; whereas the common law always supposed the execution to be granted by the Court, at the request of the party at whose suit it issued, to give him satisfaction on the judgment he has obtained. Both the common law and our statute consider the judgment as the warrant, or authority for granting the execution, but they differ in this, that by the former, the common law, the application for issuing is to the Court; by the latter, our constitution and statutes, the application is to the clerk.
So, in like manner, the clerk is by our statute considered the power or authority for granting or issuing original writs, or other leading process; thus, the Act of 1787, ch. 19, § 1, says that no writ or leading process re *60 turnable to any of the courts of record within this State, shall be granted by the clerk or his assistant in office, but under the following rules and regulations, to wit: that the clerk, either by himself or deputy, before issuing any writ or other leading process, shall take sufficient security, &e., considering the clerk’s office, as it were, the officina Irevium, the clerk himself tbe person issuing, and the writ tested or witnessed in his name, and signed by him.
Upon this view of the law how does the present case stand ? Surgoine, the judgment debtor, died the 14th August, the execution issued the 16th of the same month, two days after his death. It issued against his goods and chattels, lands and tenements ; there were then none such; the goods and chattels that were his, the judgment debtor’s at the time of his death might be considered in abeyance until the administration was granted, they then vested in the administratrix by relation from the death. The lands and tenements immediately descended to his heirs, upon the death, and they became seised of them in law in their own right; there was nothing there for the execution to operate upon. The inconvenience and hardship upon the plaintiff in the judgment, by this construction of our State laws, would be far outweighed by the loss and injury that might possibly result to other creditors or to those entitled to distribution, by adopting the common law relation to the teste of the writ. The general policy of our laws is, that dead men’s estates, or, more correctly speaking, that the estates which belonged to them in their lifetime, should after their death bring upon sale their full value, an object, for the attainment of which our law has a greater regard than the prompt payment of debts, which may have as its consequent a sacrifice of the property, an object, too, of purer morality, and supported upon more solid principles of justice, though obtained at the expense of a little delay. This policy is ingrafted into our law by the Act of 1815, ch. 37 ; it says, that from and after the passing of this Act, “ it shall not be lawful for execution to issue against executors or administrators, until twelve months after the qualification of such executor or administrator, unless judgment is obtained previous to the death of the deceased, any law, usage, or custom to the contrary, notwithstanding.” By this Act the personalty which belonged to the deceased in his lifetime is protected from execution for the space of twelve months, in the hands of the executor or administrator, with only one exception made by the Act, which I shall show presently; a length of time well enabling him to command a fair market price, and to resist the sacrifice that too frequently ensues under the coercion of an execution, a mode of administration provided by the wisdom of the Legislature, which in the case of a much indebted estate may satisfy all the creditors that otherwise might be exhausted by the rapacity of one, and where the estate is less so indebted, may, in addition to the satisfaction of the debts, yield something towards the support of the friendless widow and the helpless orphan, a mode of administration having this excellence, *61 that it in no case endangers the fair claim but rather adds to its security. This Act supports the present opinion upon the principles on which it professes to be founded. It contemplates that in all cases after the death of the debtor the execution that pursues the assets must issue against the personal representative; that is, he must be party to the execution ; this only can be where the death has taken place before the execution issued, for after that it cannot issue until scire facias runs against him to make him a party. When the execution issues before the death, it then issues against the goods and chattels, lands and tenements of the living man, and speaks the truth; it commands what is possible and what can be obeyed by the officer; when it is issued it has commenced to be executed, and does not interfere with the prohibition of the statute, which .says “ execution shall not issue,” not that “ execution shall not be executed after it is commenced ”; it does not pretend to stop the progress of an execution commenced to be executed, it does not say it shall not be levied in the hands of an executor or administrator, upon the goods, &c., which were the testator’s or the intestate’s at the time of his death, but only, that it shall not issue against the executor under twelve months, unless the judgment was obtained against the deceased in his lifetime. The provision of twelve months draws a distinction between judgments obtained against the deceased in his lifetime and judgments obtained against his representatives after his death; on the former the execution may issue against the executor or administrator, immediately upon their becoming parties by means of the scire facias, though within the twelve months from their qualification. On the latter the execution cannot issue until the twelve months are expired. In either case the executor or administrator is to be a party to the execution, for it is to issue against him, and it is a rule of law, that when either plaintiff or defendant in a personal action, dies after final judgment, and before execution, a scire facias must be sued out by, or against, his executors or administrators. Bingh. 129 ; 6 Bacon’s Abr. This rule is founded on this reasoning, that when any new person, that is, one not originally a party to the judgment, is to be charged or benefited by the execution, it may be presumed that the party newly to-be charged has some defence to offer, and the party newly to be benefited ought dertainly to show that his claim rests on sufficient authority; in order, therefore, to prevent any undue advantage by surprise, it is requisite, before proceeding to execution, to sue out the writ of scire facias by which the party to be charged is warned to show cause why execution should not issue against him, and to which he may make any defence the nature of his case may admit. Bingh. 119 ; 1 Lord Bay. 245; Salk. 319, 320. Bingham, a very recent writer on this subject, illustrates the above rule by the following example : if, says he, on a judgment against A, execution bé sued out, but before it is levied A dies, there needs no scire facias to renew this *62 judgment, bút execution may be perfected forthwith against his personal representative ; for the scire facias is to be sued out before execution to prevent surprise. Here execution had been commenced, and as the party against whom it was directed could not have made any defence to the writ of execution once sued out, there is no reason his personal representative should be in a better condition. Bingh. on Execution, 135.
It is to be remarked that the expressions in the books of execution awarded, execution sued out, execution issued, and execution taken out are all synonymous, meaning the same thing, the being- taken out of the proper office by the party for the purpose of being executed by the proper officer; see 8 Mod. 225, &c., &c. But it may be said that in legal effect by relation it amounts to the same thing whether the execution was actually taken out after or before the death, because it relates or has effect from its teste, and the law will permit- it to bear teste from the judgment. This is true in England by the common law, for though by the common law the execution only operates from its being taken out, and not from the judgment, yet, as it may be tested as of the judgment, and whenever it is material to show the time of taking out, that is proved by the teste; Hilary, 22, C. B. R.; for it is not permitted' to the defendant to say that a judicial writ, which an execution is, was issued out at any other time than in the term, for to say so would discredit the law and the officer. Plowd.
But this doctrine does not apply here, for we have shown that here the clerk issues the writ at the suit or application of the party, and not the Court. That it is not issued in term time,- but afterwards; that the actual issuing so far from being proved by its teste, that the teste is not any evidence, neither is it at all relied on for that purpose, but that by the express direction of a statute, the day of issuing or taking out is marked thereon by the issuing officer, the clerk. The common law suppositions therefore that suit is made to the Court for the issuance of the execution, who thereupon make an award for that purpose; the common law intendment, that the execution always issues in term time ; and the common law relation of the execution to its teste, importing that its teste and taking out or issuing, are at the same time, or acts immediately consequent to each other, — Gilb. Ev. 14, — do not appear here; they cannot, for they are excluded by realities in the opposition, introduced by the positive regulations of a statute, and, being so excluded, their legal consequences follow them.
We are clearly of opinion that every Court has a perfect right to watch over the execution of its judgments, and where- its process has been irregularly or fraudulently executed, to quash it, as being the best and speediest mode of doing justice, and that, in this case, the Court had sufficient ground to afford this summary interposition. 2 Wash. 54; Hendricks and Taylor v. Dundas.
Haywood, J.
A judgment was entered for the plaintiff against Sur- *63 goine in May ; he died the 14th of August, and, on the 16th, a fieri facias was sued out, upon which the sheriff seized lands and personals. A ven-ditioni exponas issued, and afterwards the fieri facias was set aside upon a motion to quash. Was it proper to set it aside? In the case of personals, iffieri facias issue after the death of defendant, tested as of the term preceding his death, it binds the goods, and they are in custodia legis, not in the hands of the executor. Willes, 131; 7 Term. 20; 1 Bos. & P. 571; 7 E. 298. Therefore, with respect to the personalty, these executions ought not to be set aside unless the law is changed by some act of Assembly, requiring the day of issuing the execution to be indorsed for the purpose of removing the lien to the day of issuance.
With respect to the realty, it is bound by the judgment and descends not to the heir, but is in custodia legis if the judgment be rendered before the death of the defendant, against whom execution may issue any time before the expiration of a year and day, after which time it cannot issue without a scire facias .against the heir. Therefore the fieri facias ought not to be set aside as regards the realty.
In relation to the death of the defendant it is altogether irregular to make any proof thereof in court, upon a motion to quash because of the issuing of execution after his death, for, if he die before the teste of the. fieri facias, the goods go into the hands of the executor, and are not the goods of the deceased described in the execution at the time it first speaks, and therefore the sheriff has no authority by the execution to intermeddle with them and dare not do so. If, on the other hand, the teste of th & fieri facias be before the death of the defendant, the goods were' the goods of the deceased, and are those described in the fieri facias and are bound by it, being in custodia legis, and do not go to the executors, and the sheriff must seize them.
So, also, is the law whenever the fieri facias issues upon the judgment, though the heir may suspend execution if it issue after the year and day without a scire facias.
Original Note. — The above opinion of Judge Haywood had been delivered at the previous term of this Court; Judge Whyte had advised until the present.
And now, after argument, Judges Brown and Peck were of opinion with Judge Haywood.
The Legislature doubtless intended to provide for something, in requiring that the time of issuance should appear upon the process, but being wholly silent as to the binding influence of the writ upon the property, it is believed it never was intended to alter the law as it stood before the passage of the Act of 1794, ch. 1, §§ 9, 10, and 57.
By the Constitution, the clerk must issue the writ, which shall bear teste; that issuance must be in vacation.
By the Act of - the process must be ready in ten days after adjournment of the Court for delivery. Here we have one reason why the indorsement should be made, to wit: to know if the clerk had done his duty.
*64 Again, the writ issuing in vacation, if neither the time of issuance or time of delivery be indorsed, the interest of the vigilant creditor might be jeopardized.
The clerk or sheriff, or both, might conspire to favor some dormant creditor, and when that was done, the proof, should the vigilant seek redress for the injury, must be sought in the country, if not found upon the writ or process; hence the passage of the Act requiring the indorsement.
There can be no reason why, in a case like the present, the goods or estate should not he bound from the teste.
Suppose it should not bind; the executor or administrator sells the estate; for what? To pay off the judgment, is the answer. The fieri facias sells the goods for the same purpose, and the chances to sell them for their value are equal.
There is as little reason for rejecting the binding influence of the fieri facias in the case of real estate.' The effect would be to institute proceedings against the heir, which must incur expense and exhaust the estate.